UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PATRICK G. BROTHERTON,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

NO. 2:17-CV-00098-JLQ

ORDER RE: MOTION TO DISMISS

BEFORE THE COURT is Defendant' Motion to Dismiss (ECF No. 5). Response and Reply briefs have been filed. (ECF No. 9 & 11). The court heard oral argument on the Motion on August 25, 2017. Plaintiff was represented by Jess Casey and Marshall Casey. Assistant United States Attorney Rudolf Verschoor appeared on behalf of Defendant. This Order memorializes and supplements the court's oral rulings.

**I. Introduction**

Plaintiff, Patrick Brotherton, filed this lawsuit against Defendant, the United States of America, on March 15, 2017. Plaintiff brings two claims relating to medical care in January, 2014. Plaintiff asserts failure to secure informed consent in violation of RCW 7.70.050 and medical negligence under RCW 7.70.040. These claims are asserted on the basis of care provided by "Dr. Sim or the VA medical personnel." The VA is the U.S. Department of Veterans Affairs. Plaintiff alleges "the actions of all medical providers described herein were done within the scope of their employment with the United States of America, as part of the VA."

///

ORDER - 1

The Defendant (hereafter "Government") argues the court lacks jurisdiction and Plaintiff has failed to state a claim. The Government contends the surgery was elective surgery performed by a "private orthopedic surgeon", not by VA personnel. The Government contends the court lacks jurisdiction over a claim against a physician not employed by the VA or otherwise a federal government employee. The Government alleges VA personnel, including Dr. Sim, who did not perform the surgery, had no duty to secure informed consent. Additionally, the Government argues Count II fails to state a plausible claim for negligence.

**II. Factual Background**

As the court is reviewing a Motion to Dismiss, the facts set forth herein are largely taken from the Complaint. However, the court may consider additional evidence concerning factual questions bearing on the jurisdictional issue. Plaintiff has been receiving medical care through the VA medical system for several years. (Complaint 2.1). Plaintiff alleges VA care providers knew he was planning to have elective surgery on his right ankle as an old injury from a fall made his ankle painful and resulted in an inability to walk normally. (*Id*. at ¶ 2.1-2.2). Plaintiff alleges VA care providers knew the surgery had been delayed "because he had an ulcer on his left toe which was not healing normally" and because Plaintiff is diabetic. (*Id*. at ¶ 2.2-2.3).

Plaintiff alleges that on January 10, 2014, he informed Dr. Sim, his primary care physician at the VA, that he had surgery scheduled for January 17, 2014, and he was instructed to have a blood test. (*Id*. at ¶ 2.4). Plaintiff claims the blood test, taken on January 13, 2014, showed an A1C 9.6 which was too high for elective surgery. (*Id*. at ¶ 2.5). Plaintiff claims both he and Dr. Sim were informed of the lab result, but Plaintiff "was not told that he should not proceed with the surgery." (*Id*. at ¶ 2.6).

///

///

ORDER - 2

On January 17, 2014, a "contract orthopedic surgeon" Dr. Craig Barrow performed the surgery on Plaintiff's right ankle. (*Id*. at ¶ 2.9). The ankle did not heal properly after surgery and on March 19, 2014, Dr. Barrow performed a below the knee amputation. (*Id*. at ¶ 2.10-2.11).

The factual information provided by the Government in support of its Motion to Dismiss includes a Declaration of Dr. Scott Nye, the Chief of Staff at the Mann-Grandstaff VA Medical Center in Spokane, Washington. (ECF No. 5-1). Dr. Nye acknowledges Plaintiff was a patient at the VA and because the VA did not have the capacity for the surgery Plaintiff "was referred out to the community". (*Id*. at ¶ 2). Dr. Nye states: "Dr. Barrow is not and was not a VA employee or U.S. Government employee" on January 17, 2014 and the VA "did not have a contract with Dr. Barrow." (*Id*. at ¶ 4). Dr. Nye further avers, "no VA health care personnel took part in Mr. Brotherton's surgery." (*Id*.).

Dr. Daniel Sim has filed a Declaration stating he is a primary care physician employed by the VA, and Plaintiff was under his care beginning in August 2008. (ECF No. 5-6). Dr. Sim states he is "not a surgeon", does not perform surgeries, and "was not involved in any way with Mr. Brotherton's surgery on his ankle." (*Id*.).

Plaintiff has also provided evidence outside the pleadings in the form of the Declaration of Dr. James Leo. (ECF No. 9-1). Dr. Leo is offered as an expert witness who has reviewed Plaintiff's medical records. Dr. Leo opines, *inter alia*, that a reasonably prudent primary care physician in the State of Washington "who receives a test showing hemoglobin A1C of 9.6%, and who was aware or should have been aware that the patient was having elective surgery on his ankle," is in violation of the standard of care if he approves the patient for surgery, does not advise against the surgery, or fails to contact the potential surgeon and "alert the surgeon to the problems of healing signified by the A1C tests." (ECF No. 9-1, ¶¶ 7, 8, & 9).

ORDER - 3

**III. Standard of Review**

The Government's Motion to Dismiss asserts both lack of subject matter jurisdiction, and failure to state a claim. As the Supreme Court has discussed, these are distinct concepts, and courts sometimes "obscure the issue by stating the court is dismissing for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or failure to state a claim." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006). If subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute. *Id*. at 514. However, if an essential element of the claim for relief is at issue, the issue is for the trier of fact. *Id*.

The Government relies on *Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009), to argue the court may rely on evidence outside the Complaint. In *Robinson*, the court stated unless the jurisdictional issue is "inextricable from the merits of the case," the court may determine jurisdiction by hearing evidence and resolving factual disputes. *Id*. at 685. "No presumptive truthfulness attaches to plaintiff's allegations. Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Id*.

In addressing the sufficiency of a pleading, Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Determining whether a complaint states a plausible claim for relief is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

///

**IV. Discussion**

Critical to the Government's argument are the factual contentions that Dr. Sim "was not involved in any way" with Plaintiff's surgery, and that Dr. Barrow was not an employee or contractor with the VA. If those facts are established, then the critical legal inquiry is whether Dr. Sim, as a referring physician not involved with the ankle surgery, had any legal duty to provide informed consent.

The allegations of the Complaint are Dr. Sim knew of Plaintiff's impending ankle surgery, knew of his diabetic condition, ordered an A1C blood test in preparation for surgery, received the blood test results, reported them to Plaintiff, but did not advise against having the surgery. (Complaint ¶ 2.2-2.6). The Complaint does not allege Dr. Sim had a role in performing the surgery. The Complaint does not make any specific factual allegation that Dr. Barrow was a VA employee or contractor, but contains only the conclusory allegation that "the actions of all medical providers described herein were done within the scope of their employment with the United States of America, as part of the VA." (Complaint ¶ 1.4).

**A. <u>Lack of Subject Matter Jurisdiction</u>** - One would assume the Government seeks dismissal of the entire Complaint if the court lacks jurisdiction, but the Government states: "This Court lacks subject matter jurisdiction over Plaintiff's informed consent claim in Count 1 because the doctor that performed the surgery on Plaintiff (Dr. Barrow) was not a VAMC or federal employee." (ECF No. 5, p. 3-4). The Government argues that under the Federal Tort Claims Act, the United State's limited waiver of sovereign immunity extends only to certain torts of federal employees, and specifically does not extend to contractors. <u>citing</u> 28 U.S.C. § 2671.

The Complaint contains allegations about the conduct of Dr. Sim, who is a VA employee. Plaintiff has submitted the affidavit of Dr. Leo opining that Dr. Sim did not meet the standard of care. This court has jurisdiction. 28 U.S.C. § 1346(b).

ORDER - 5

**B. Failure to State a Claim**

The Complaint contains two claims: 1) failure to secure informed consent, and 2) negligence.

**Count I - Failure to Secure Informed Consent** - A claim based on failure to secure informed consent has four elements under Washington law. *Backlund v. Univ. of Washington*, 137 Wash.2d 651 (1999); RCW § 7.70.050. The plaintiff must establish:

1) The health care provider failed to inform the patient of a material fact or facts relating to treatment;

2) The patient consented to the treatment without being aware of or fully informed of such material fact or facts;

3) A reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts; and

4) The treatment in question proximately cause injury to the patient.

*Id.* The Complaint alleges loss of limb was a material risk if Plaintiff proceeded with the surgery. (Complaint ¶ 4.1). Plaintiff alleges Dr. Sim failed to inform him of the material risk that he would lose his foot if he proceeded with the surgery. (*Id.* at 4.3). Plaintiff alleges he proceeded with the surgery without being fully informed. He alleges a reasonably prudent patient would not have proceeded had he been informed of the material risk. And lastly, Plaintiff alleges the surgery caused him damage.

Plaintiff has pled the four required elements of an informed consent claim. That Plaintiff has pled the elements does not resolve the question of whether Dr. Sim, as the referring physician, had a duty in regard to informed consent, or whether that duty rested solely with the surgeon, Dr. Barrow. The primary authority the parties have provided concerning the legal duty of a referring physician under Washington law is *Bottemiller v. Gentle Dental*, 2002 WL 31895159 (Wash. Ct. App. 2002). There the court examined the duty of a referring physician to provide informed consent and stated, "the majority of jurisdictions that have addressed whether referring physicians have a duty to obtain a

ORDER - 6

patient's informed consent have concluded that they do not." *Id*. at *10. The court observed a minority of courts have imposed a duty when "the referring physician has retained a degree of participation and control in the treatment." *Id*. at *11. The court concluded that because the referring physician did not participate in or control the surgery, there was no duty to inform the patient that experts disagreed as to the benefit of the surgery or advise as to alternatives to surgery.

The degree of participation or control by the referring physician may often present a factual inquiry not properly resolved on a motion to dismiss. In *Bynum v. Magno*, 125 F.Supp.2d 1249 (D. Hawaii 2000), the court faced the issue of the duty of a referring physician under Hawaii law: "The existence of a duty turns on the degree of participation or retention of control of the referring physician." *Id*. at 1255. In considering motions for summary judgment, the court found questions of fact as to the degree of control and considered whether the referring physician merely referred or "affirmatively recommended" the surgery, and noted the referring physician was the "attending physician participating in the joint management of Plaintiff's care." *Id*. at 1256.

Factual issues remain as to whether Dr. Sim retained any degree of participation or control in the surgery decisions by Dr. Barrow. The parties appear to agree Dr. Sim may have had some involvement with the pre-operative A1C blood test and that the result of such test was reported to him. The "Statement of Facts" portion of the Complaint does not specifically allege Dr. Sim participated in the surgery or post-surgical treatment. However, the Complaint does allege: "Dr. Sim and other medical providers at the VA failed to inform Mr. Brotherton of all the options of care for the foot following the surgery." (Complaint ¶ 4.4).

The Government argues that referring physicians should have no duty to warn of risks of potential treatment, but rather the treating (in this case surgeon) should have the exclusive duty. In the *Bynum* case, the court noted under Hawaiian law, "where the surgeon obtains informed consent, the referring physician's duty to obtain it may be

ORDER - 7

discharged because the chain of causation is broken." *Id*. at 1255. However, Dr. Sim was Plaintiff's primary care provider at the VA and had been seeing Plaintiff for about 5 years prior to the surgery. (Dec. of Dr. Sim, ECF No. 5-6). Further factual development is required to establish when Dr. Sim last saw Plaintiff prior to the surgery; on what occasions prior to the surgery he saw Dr. Barrow; who ordered the A1C blood test and to whom and when was it reported; the discussions, if any, between Dr. Sim and Dr. Barrow as to the blood test results; and the consequences, if any, on the foregoing, etc. These factual questions go to the degree of control and participation in the surgical process by Dr. Sim, if any, and thus whether he had a duty to advise Plaintiff of the risks of surgery.

**Count II - Negligence -** A negligence claim requires a showing of duty, breach, causation, and damages. *Ranger Ins. Co. v. Pierce Co.*, 164 Wn.2d 545, 552 (2008). "The existence of a legal duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Christensen v. Royal School Dist.*, 156 Wash.2d 62, 67 (2005). Generally expert testimony is required to establish the standard of care. *McLaughlin v. Cooke*, 112 Wash.2d 829, 836 (1989). Expert testimony is typically also required on the issue of proximate cause in medical malpractice cases. *Id*. at 837. "The concept of duty is a reflection of all those considerations of public policy which lead the law to conclude that a plaintiff's interests are entitled to legal protection against the defendant's conduct." *Volk v. DeMeerleer*, 187 Wash.2d 241, 266 (2016).

The Complaint alleges Plaintiff was a patient of Dr. Sim and the VA, and Dr. Sim and the VA "failed to exercise the degree of skill, care, and learning expected of a reasonably prudent surgeon." (Complaint ¶ 5.2). The Complaint then generically asserts causation and damages. Dr. Sim's Declaration states he is "not a surgeon" and he does not perform surgeries. (ECF No. 5-6). The Government's briefing argues it would have been inappropriate for Dr. Sim, a non-surgeon, to advise on the risks of surgery.

///

Plaintiff has also filed the opinion of Dr. Leo that Dr. Sim's conduct did not meet the standard of care. (ECF No. 9-1). Dr. Leo is a licensed medical doctor in California and states he has previously been accepted as an expert witness by Washington courts. Dr. Leo states Dr. Sim should not have approved Plaintiff for surgery. (ECF No. 9-1, ¶ 7). He further states Dr. Sim should have advised Plaintiff against the surgery. (*Id.* at ¶ 8). He also opines Dr. Sim should have contacted Dr. Barrow and alerted him to the A1C blood test results and potential healing problems. (*Id.* at ¶ 9).

**Duplicative Claims** - The Government has argued the claims are duplicative and "Plaintiff is not allowed to plead a 'lack of informed consent' claim and then bring another count of negligence based on the same legal theory." (ECF No. 5, p. 10). Plaintiff counters that informed consent and medical negligence claims are distinct and he may bring both. Plaintiff is correct in one regard: "Negligence and informed consent are alternative methods of imposing liability on a health care practitioner. Informed consent allows a patient to recover damages from a physician even though the medical diagnosis or treatment was not negligent." *Backlund v. Univ. of Washington*, 137 Wash.2d 651, 659 (1999).

As the Government asserts, the two claims are very similar. The informed consent claim alleges Dr. Sim failed to advise of the poor healing and amputation risk of the surgery. The negligence claim alleges Dr. Sim should not have approved Plaintiff for the surgery and should have advised against it. In that sense, the claims are duplicative. However, Dr. Leo's opinion is also that it was a violation of the standard of care to "not contact the potential surgeon and alert the surgeon to the problems of healing signified by the A1C tests." (ECF 9-1, ¶ 9). This alleged duty of the referring primary care physician to contact the surgeon and advise the surgeon of risks is not the same as a duty of informed consent. Informed consent is a doctrine "premised on the fundamental principle that a competent individual has a right to determine what shall be done with [his] own body." *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 522 (9th Cir. 1984). Informed

ORDER - 9

consent is a duty between the physician and patient which "focuses on the patient's right to know his bodily condition and to decide what should be done." *Backlund*, 137 Wash.2d at 660. Part of Plaintiff's negligence claim appears to be slightly different: that Dr. Sim had an obligation to contact Dr. Barrow and advise of the lab test results and potential risks. At this stage of the proceedings, the factual information about whether the lab result was conveyed is not known.

**V. Conclusion**

The Government's argument the court lacks subject matter jurisdiction is rejected. The Complaint contains allegations about Dr. Sim, Dr. Barrow, and other VA medical personnel. It is undisputed Dr. Sim is a medical doctor employed by the VA. As to the Government's argument the Complaint fails to state a claim because Dr. Sim was a referring physician, there are potential factual questions relevant to whether Dr. Sim had a duty concerning informed consent. There is also the affidavit of Dr. Leo opining a referring physician violates the standard of care if he approves surgery for a patient with A1C blood test of 9.6% and does not advise against the surgery and does not contact the potential surgeon to "alert the surgeon to the problems of healing signified by the A1C tests". (ECF No. 9-1).

The court has previously denied the Government's untimely Motion to Supplement the Record (See Order at ECF No. 17). Although the court has not considered the proposed supplementary materials for the purpose of this motion, those materials could be considered in a motion for summary judgment. The medical records the Government sought to introduce appear to show Dr. Barrow saw Plaintiff on multiple occasions prior to the surgery at issue. The records also show Dr. Barrow reviewed the risks of surgery, including wound healing problems, with Plaintiff. However, these are factual matters not appropriate for consideration on review of a motion to dismiss. The questions of legal duty of a referring physician and the degree of participation or control by Dr. Sim are remaining factual and legal questions.

ORDER - 10

**IT IS HEREBY ORDERED:**

The Government's Motion to Dismiss (ECF No. 5) is **DENIED**.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 28th day of August, 2017.

<u>s/ Justin L. Quackenbush</u><br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE